UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**STUD STEPHENS,**

    **Plaintiff,**

v.                                                                           **Case No. 8:10-cv-2787-T-27AEP**

**MANATEE COUNTY,**

    **Defendant.**

_____/

**ORDER**

BEFORE THE COURT are the parties' motions for summary judgment (Dkts. 45, 53) and their respective responses in opposition (Dkts. 57, 60). Upon consideration, Defendant's motion for summary judgment (Dkt. 45) is GRANTED and Plaintiff's motion (Dkt. 53) is DENIED.

**Background**

This is an action involving claims of race discrimination and Family Medical Leave Act violations. In May 2008, Manatee County hired Stud Stephens, an African American, to work in a biosolids dryer facility where waste sludge is converted into a fertilizer product. As Stephens' supervisor, Christian Collins, explained, the process is "extremely dangerous" and carries a risk of explosion if it is not performed properly.

The facility is subject to regulation by the Florida Department of Environmental Protection which has issued a permit for the facility's operation. The permit specifically requires the facility to maintain logs which include "the signature and certification number of operator(s)" at the plant, the "date and time in and out," "specific operation and maintenance activities," "tests performed and samples taken," and "major repairs made." (Dkt. 45-3, at 28). Violation of these requirements may result in the suspension, termination or revocation of the permit. Fla. Admin. Code r. 62-620.345(1)(b).

On January 21, 2010, Stephens was scheduled to work from 7:00 p.m. to 7:00 a.m. The only other individual working at the facility that night was James Pusateri, who is Caucasian. At approximately 3:50 a.m., Collins received a call from an alarm monitoring company indicating that trouble had arisen at the facility. Collins called the facility but no one answered. He called Stephens' and Pusateri's cell phones and, again, no one answered. An employee from an adjacent plant discovered that all of the lights were turned off and the facility appeared to be shut down. He could not locate Stephens or Pusateri.

Collins arrived at the facility shortly after 4:00 a.m. and confirmed that Stephens and Pusateri had indeed abandoned their posts. Upon inspecting the facility, he found certain machinery operating unsupervised which, he believed, could have resulted in a dangerous malfunction or fire. Collins reviewed the official plant log and discovered falsified entries indicating that work was performed at 5:00 a.m. and that Stephens and Pusateri departed the plant at 7:00 a.m.

Collins informed the County Utilities Department's director, Daniel Gray, of the incident. On January 25, 2010, Gray met with Stephens, who admitted that he was scheduled to work until 7:00 a.m., that he left his shift before 5:00 a.m., and that he did not have permission to leave early. Stephens informed Gray that Pusateri had made the log book entries.

Following this meeting, Gray terminated Stephens and Pusateri. Stephens received a "Notice of Disciplinary Action" which cited multiple specific violations of the Manatee County Government Personnel Policy, Rules and Procedures Manual as the reason for his termination. (Dkt. 45-3, at 30).

At Stephens' request, the County conducted a post-termination hearing. Stephens appeared through counsel and was afforded the opportunity to testify, to offer exhibits, to call witnesses, to cross examine adverse witnesses, and to make a closing argument. After the hearing, the County officer issued an eight page recommended order finding that the County had just cause to terminate Stephens. (Dkt. 45-4). The County administrator formally adopted the recommendation. (*Id.*).

Shortly after his termination, Stephens filed a discrimination complaint pursuant to the Manatee County Commission's Personnel Policy. After a lengthy investigation, a report was issued which found no illegal discrimination or retaliation.

Proceeding *pro se*, Stephens commenced this action. After suffering two dismissals without prejudice, he filed a rambling second amended complaint (Dkt. 31). Although an improvement on his prior pleadings, the second amended complaint remains disjointed and at times incoherent. While less than clear, Stephens appears to allege six claims: (1) that he was terminated on account of his race, (2) that he was not promoted to "Senior Operator" and/or "Operator in Charge" on account of his race, and further, was terminated in retaliation for opposing the use of race discrimination in the promotion process, (3) that he was terminated for exercising his rights under the Family Medical Leave Act, (4) that he was deprived of his rights under the Equal Protection Clause because the County concealed the opportunity to apply for an Operator in Charge position, (5) that the County's job description for a Biosolids Plant Operator position caused a disparate impact on the basis of race which was not job-related or consistent with business necessity, and (6) that he was denied the right to due process in the pretermination hearing.

The County filed a motion for summary judgment, which was limited to Stephens' first and third claims, that is, Stephens' claims that he was terminated because of his race and because he attempted to exercise his FMLA rights. An order was entered informing Stephens of the requirements of Fed. R. Civ. P. 56. (Dkt. 49). He filed a response, several exhibits, an affidavit, a motion to strike, and a second motion for summary judgment.[1]

## Standard

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any

---

[1] Stephens' first motion for summary judgment (Dkt. 26) was denied (Dkt. 30).

material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. Northern Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id*. at 1260.

After a properly supported motion for summary judgment has been made, the nonmoving party must "cit[e] to particular parts of materials in the record" showing a genuine fact issue or to demonstrate that the materials cited by the opposing party fail to show the absence of a disputed issue of fact. Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

All justifiable inferences and all reasonable doubts about the facts should be resolved in favor of the nonmoving party. *Hickson Corp.*, 357 F.3d at 1260. The Court will not weigh the evidence or make findings of fact. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). "Instead, the court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party." *Id.*

**Stephens' first claim for relief: termination on account of race**

Title VII prohibits employers, including county officials, from discriminating on the basis of race. *See* 42 U.S.C. § 2000e-2(a)(1). A claim of race discrimination can be established by direct evidence, circumstantial evidence, or statistical proof. *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008). Stephens relies on direct and circumstantial evidence.

"Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." *Standard v. A.B.E.L. Servs., Inc*. 161 F.3d 1318, 1330 (11th Cir. 1998). "Therefore, remarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." *Id.*

4

Stephens submitted an affidavit averring that on August 12, 2009, Christian Collins stated, "I asked Mac Smith to work with Stud, because he needs a white man to tell him what to do." (Dkt. 54). This statement was neither made by the decision-maker nor related to the decisionmaking process. It is not direct evidence of discrimination in Gray's decision to terminate Stephens.

A circumstantial case may be established using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, the plaintiff must establish a prima facie case of disparate treatment, which requires a showing that: "(1) [he] is a member of a protected class; (2) [he] was subjected to an adverse employment action; (3) [his] employer treated similarly situated employees outside of [his] protected class more favorably than [he] was treated; and (4) [he] was qualified to do the job." *Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006). "If the plaintiff satisfies these elements, then the defendant must show a legitimate, non-discriminatory reason for its employment action." *Id.* "If it does so, then the plaintiff must prove that the reason provided by the defendant is a pretext for unlawful discrimination." *Id.*

The parties' dispute focuses on the third element of the prima facie case, whether Stephens was treated differently than similarly-situated Caucasians.[2] Stephens contends that James Fulford and Matthew Duff regularly made false entries in the log book and that they, like most employees, left work early. But there is no evidence that the decision maker, Gray, was aware of any specific instances in which an employee left early or made false log entries. The only evidence Stephens identifies shows that Gray had no knowledge that any operator had documented his time incorrectly before meeting with Stephens. And even then, there is no evidence that specific instances were identified to Gray.

---

[2] Stephens addresses this issue in the analysis of pretext. There is authority for considering comparator evidence at the pretext stage, particularly where, unlike here, there is evidence that the plaintiff was replaced by someone outside his protected class, and the plaintiff is a high-ranking employee who is unable to find a suitable comparator. *See Rioux*, 520 F.3d at 1277. Other cases address comparator evidence as part of the prima facie case. *See Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1326-27 (11th Cir. 2011). Regardless of where the inquiry is performed, the outcome in this case is the same.

The other comparator Stephens relies on is his supervisor, Collins. Collins, however, is not sufficiently similar to serve as a valid comparator. "[T]o determine whether employees are similarly situated, we evaluate 'whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.'" *Burke-Fowler*, 447 F.3d at 1323 (quoting *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)). "When making that determination, '[w]e require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.'" *Id.* (quoting *Maniccia*, 171 F.3d at 1368 and applying prior panel rule).

According to Stephens, Collins was disciplined for the "unlawful practice of authorizing employee[s] to leave early," but he was not terminated. (Dkt. 57 at 9). As evidentiary support, Stephens points to the County investigator's final report on his discrimination claim[3] which states that Gray informed her that he learned that "while the operators were putting in their 12 hours they were not documenting their time correctly." (Dkt. 45-4 at 24). The report states that Gray informed the investigator that "he met with Mr. Collins, who admitted knowing and allowing this practice, resulting in his being issued a Notice of Disciplinary Action for his part." (*Id.*).

Weighed against the appropriate standard, the conduct of Collins was too dissimilar to render him a suitable comparator. While he may have allowed employees to document their time incorrectly, there is no evidence that he authorized employees, such as Stephens, to leave the facility completely abandoned while the equipment was running.[4] Nor has Stephens pointed to any evidence that Collins had authorized him to leave on the night of the alarm. Likewise, Stephens has not identified record evidence showing that Collins permitted employees to falsify log entries regarding the time when work was performed. Collins' misconduct was not "nearly identical," and therefore,

---

[3] The County did not raise any objections to the report.

[4] To the extent Stephens asserts that Collins, himself, had left the facility unattended with equipment running, his assertion must be rejected. Stephens has not pointed to any evidence that this occurred or that Gray was aware of it.

he is not a valid comparator. As Stephens has not identified a similarly-situated employee who received lesser disciplinary measures, he failed to establish a prima facie case of discrimination.

Further, there is insufficient evidence that the decision to terminate Stephens was pretextual. The County articulated a legitimate, non-discriminatory reason for his termination, namely, multiple workplace rule violations.[5] "[T]he 'work rule' defense is arguably pretextual when a plaintiff submits evidence (1) that [he] did not violate the cited work rule, or (2) that if [he] did violate the rule, other employees outside the protected class, who engaged in similar acts, were not similarly treated." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1363 (11th Cir. 1999). Stephens relies on both. For the reasons previously discussed, the second ground fails.

As for the first ground, Stephens contends that he did not violate any of the multiple work rules cited in his termination letter. "The inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance." *Rioux*, 520 F.3d at 1278. Therefore, the focus is on whether the ultimate decision maker, Gray, honestly believed that Stephens had violated the work rules identified in the Notice of Disciplinary Action. *See Hawkins v. Ceco Corp.*, 883 F.2d 977, 980 n.2 (11th Cir. 1989); *Smith v. Papp Clinic, P.A.*, 808 F.2d 1449, 1452-53 (11th Cir. 1987).

Stephens asserts that his supervisor, Collins, had a policy of allowing employees to leave when their work was completed. But he has not pointed to any evidence supporting this assertion. Stephens further contends that Collins permitted employees to log out at 7:00 a.m. regardless of when their work was completed. But by all appearances, this was a clear violation of the County's workplace rules. While this practice may have been tolerated by Collins, Stephens has offered nothing to show that the ultimate decision maker, Gray, did not honestly believe that Stephens had

---

[5] Contrary to Stephens' assertion, the County did not rely on his prior criminal record in making the decision to terminate him. This issue therefore need not be addressed. Further, Stephens' collateral estoppel argument is rejected, as he has not pointed to any specific findings of fact made in the post-termination hearing that the County is attempting to re-litigate in this matter.

violated the County's workplace rules by falsifying his time records. Moreover, Stephens has not identified any evidence showing that Gray did not honestly believe that Stephens abandoned his post, left the facility completely unattended for several hours while machinery was running, and falsified entries showing when work was performed, all in violation of the County workplace rules. Stephens therefore failed to show that Gray did not hold an honest belief that he had committed multiple workplace rule violations.

Because Stephens did not establish a prima facie case or demonstrate pretext, he has not established a circumstantial case of discrimination under *McDonnell Douglas*. Stephens can still survive summary judgment, however, "if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). "A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents 'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decision maker.'" *Id.* (quoting *Silverman v. Bd. of Educ.*, 637 F.3d 729, 734 (7th Cir. 2011)).

On this record, no reasonable jury could infer that racial animus was a motivating factor in Gray's decision to terminate Stephens. For the reasons previously discussed, the record is bereft of evidence that race had anything to do with Stephens' termination. In fact, the evidence suggests quite the opposite. After the incident, Collins reported Stephens' and Pusateri's misconduct to Gray. Gray reviewed the matter and terminated both Stephens, who is African-American, and Pusateri, who is Caucasian, for the same reasons.[6] Notwithstanding his arguments, Stephens has not presented sufficient circumstantial evidence to create a genuine issue of material fact concerning the County's

---

[6] Stephens' assertion that Pusateri was hired for the sole purpose of asserting a race-neutral basis for terminating Stephens is neither believable nor supported by any evidence.

8

motivation for his termination. Therefore, the County is entitled to summary judgment.[7]

**Stephens' third claim for relief: retaliatory discharge for exercising FMLA rights**

Employees may bring two types of claims under the FMLA: retaliation claims, based on discrimination for engaging in FMLA-protected activities, and interference claims, based on the denial of substantive FMLA rights. 29 U.S.C. § 2615(a). Stephens' claim appears to be that he was terminated in retaliation for requesting FMLA-protected leave.

A few weeks before his termination, Stephens informed Collins that he had contracted Hepatitis-C and would be undergoing treatment. He provided Collins with an information sheet that identified certain side effects that could be caused by his medication. Stephens appears to have discussed the process for taking FMLA leave with the Utilities Department's human resources liaison. But he has not pointed to any record evidence showing that he actually submitted the FMLA leave request form.

Preliminarily, there is no direct evidence that the County terminated Stephens in retaliation for attempting to exercise any FMLA-protected rights. Stephens asserts that Collins stated, "if any one of you has to call-in sick, I want you all to know right now, you're not going to be welcome here." (Dkt. 57 at 25). This is not direct evidence of retaliation, however, as the statement was not made by the decision-maker and did not correlate with Stephens' termination.

---

[7] Stephens' remaining arguments are rejected. First, to the extent he contends that the County is procedurally barred from raising claims or presenting evidence that was not submitted in the County's administrative hearing, this argument is rejected. This federal discrimination action is not an appeal of the County hearing. Second, McDonald's affidavit contained sufficient averments to authenticate the attached documents and to show she is competent to testify. Third, it is clear that the "Exhibit 13" which was not received into evidence at the County hearing is not the same Exhibit 13 to McDonald's affidavit. The testimony at the hearing showed that the proffered Exhibit 13 consisted of an amendment to Stephens' employment application and a memorandum regarding his application. By contrast, McDonald's Exhibit 13 is the hearing officer's recommendation, which necessarily was prepared after the hearing. Fourth, whether Stephens was hired as an Operator II or III, and whether he was the lead operator is not material to whether he was terminated because of his race. Fifth, Stephens' contention that there was a "first group" composed of only white employees and a "second shift"of black employees is neither supported by the evidence nor material to the issues in his termination claim. Sixth, Stephens' contention that Gray improperly relied on hearsay in making the decision to terminate him is rejected, as Stephens has not pointed to anything that would require an employer to follow the rules of evidence in making employment decisions.

Further, there is no circumstantial evidence to support a retaliation claim. As with the Title VII claims, a circumstantial case of retaliation may be established using the *McDonnell Douglas* burden-shifting framework. *Martin v. Brevard Cnty. Pub. Schs.*, 543 F.3d 1261, 1268 (11th Cir. 2008). The employee has the initial burden of making a prima facie showing that: "(1) he engaged in statutorily protected activity, (2) he suffered an adverse employment decision, and (3) the decision was causally related to the protected activity." *Id.* The burden then shifts to the employer to articulate a legitimate reason for the adverse action. *Id.* Finally, the employee has the burden to show that the employer's proffered reason was pretextual. *Id.*

Stephens failed to establish the third element of his prima facie case. "To establish the causal connection element, a plaintiff need only show that the protected activity and the adverse action were not wholly unrelated." *Brungart v. BellSouth Telecommc'ns, Inc.,* 231 F.3d 791, 799 (11th Cir. 2000) (quotation and alterations omitted). Stephens appears to rely on the temporal proximity between his attempt to request FMLA leave and his termination. "The general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." *Id*. However, causation cannot be established by temporal proximity where, as here, "there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged [or was attempting to engage] in protected conduct." *Id.* Simply put, "[a] decision maker cannot have been motivated to retaliate by something unknown to him." *Id.* Because the undisputed evidence shows that Gray was completely unaware of Stephens' condition and his alleged attempt to obtain FMLA leave (Dkt. 45-1, Gray Aff. ¶ 5), Stephens has not established the required causal connection. *Id.*; *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1235 (11th Cir. 2010).[8] As the record is bereft of other

---

[8] To the extent Stephens contends that the County interfered with his FMLA rights by terminating him instead of permitting him to take FMLA leave, his claim necessarily fails because the evidence shows that he "would have been dismissed regardless of any request for FMLA leave." *Krutzig*, 602 F.3d at 1236. "[T]he unrebutted evidence that the decision maker was not aware, at the time of the decision to terminate [Stephens], of [his] request to commence FMLA

circumstantial evidence of retaliation, the County is entitled to summary judgment.

**Stephens' motion for summary judgment**

Stephens' request for summary judgment must be denied. As discussed, the County is entitled to summary judgment on two of his claims. As for the remaining four claims, Stephens has not pointed to sufficient record evidence demonstrating the absence of a genuine issue of material fact. *See* Fed. R. Civ. P. 56(c).

Further, Stephens' claim that he was denied procedural due process in the pretermination hearing fails because a "'tenured employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story' before a state or state agency may terminate an employee." *McKinney v. Pate*, 20 F.3d 1550, 1561 (11th Cir. 1994) (en banc) (quoting *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546 (1985)). "That hearing is not a mini-trial and 'need not definitely resolve the propriety of the discharge. It should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.'" *Id.* (quoting *Loudermill*, 470 U.S. at 545-46). The undisputed evidence shows that Stephens was afforded a pretermination hearing that satisfied these requirements.

Moreover, it is well-settled that "the process a state provides is not only that employed by the board, agency, or other governmental entity whose action is in question, but also includes the remedial process state courts would provide if asked." *Horton v. Board of Cnty. Comm'rs of Flagler Cnty.*, 202 F.3d 1297, 1300 (11th Cir. 2000) (citing *McKinney*, 20 F.3d at 1561-65). Accordingly, a procedural due process claim will only arise if the state "fail[s] to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest . . . ." *Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000); *see McKinney*, 20 F.3d at 1557. Because Stephens

---

leave establishes as a matter of law that [his] termination was for reasons other than [his] requested leave." *Id.*

has not shown that the state lacked adequate procedures to correct any deficiency in the pretermination hearing, he cannot establish a procedural due process claim.

## Conclusion

Accordingly, it is ORDERED that

(1) The County's motion for summary judgment (Dkt. 45) is GRANTED. Partial summary judgment is entered on Stephens' first claim for relief (discriminatory discharge) and his third claim for relief (retaliation for exercising FMLA rights).

(2) Stephens' motion for summary judgment (Dkt. 53) is DENIED.

(3) The County is granted leave to file a second motion for summary judgment directed at Stephens' remaining claims by December 20, 2011.

(4) The pretrial conference set for January 13, 2012 is rescheduled to April 6, 2012 at 10:30 a.m.

(5) The trial term is reset to April 30, 2012.

**DONE AND ORDERED** this 21st day of November, 2011.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Unrepresented parties
Counsel of Record